[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Both parties appeared and were represented by counsel. All statutory stays having expired, the court has jurisdiction.
Having heard the evidence, the court finds as follows:
The defendant and plaintiff, whose maiden name was Baldwin, intermarried at New London, Connecticut on February 14, 1953; that the plaintiff has resided continuously in Connecticut for a period.d of one year next preceding the date of the filing of this complaint; that there are no minor children issue of the marriage; that there were no other minor children born to the plaintiff since the date of the marriage of the parties; that the parties have 15 adult children; that the marriage has broken down irretrievably and that there is no hope of reconciliation. The parties were also caretakers for ten foster children.
From 1953 to 1982 the marriage of the parties seemed to be smooth and happy for both. Defendant was the income producer through various employment while the plaintiff cared for the children and household responsibilities.
According to the plaintiff the parties had a very satisfactory sexual relationship prior to 1982 but it ceased thereafter.
The defendant testified that in 1982 he became psychologically impotent CT Page 11005 from stress of loss employment and failure to find employment. An attempt to operate a restaurant business with a co-partner failed. However, in 1985 plaintiff became a co-partner with John Eldridge in installing floors. It was during this relationship that the defendant claims he was no longer impotent and began his gay existence. This lifestyle continued with other partners until December of 1998 when the defendant moved to Palm Springs, California to live with Robert Rose, a chiropractor. It was at this time that the plaintiff first learned of the defendant's sexual preference.
When defendant told the plaintiff that he was gay and was going to live in California, she told him that if he left, the marriage was over and that she would file for a divorce. The defendant left for California in December 1998. Shortly thereafter, plaintiff commenced this action.
It is obvious that the marriage of the parties has broken down irretrievably with no hope for reconciliation. I find the defendant more at fault for the breakdown of the marriage than the plaintiff.
The plaintiff, who was born February 18, 1933, appears to be in good health but is taking medication for high blood pressure and high cholesterol. In 1980 she returned to school and earned a Bachelor of Science Degree in Sociology (Applied Social Relations). She was employed while attending school.
In 1986 the plaintiff began employment with the State of Connecticut Commission of Human Rights and Opportunities where she is presently employed and has a yearly income of $52,000.00±. She also receives a monthly social security benefit of $828.00. Therefore, her total net weekly income is $843.00. (Plaintiffs Exhibit 20).
Plaintiff would like to be employed for a couple of more years. If plaintiff retired immediately she would receive about $1,100.00 per month from her State pension.
The defendant, who is about 67 years of age, may have recovered from cancer of the prostate but is checked periodically for same. He also suffers from thyroid problems, high blood pressure and arthritis.
The defendant has a financial background and during the marriage was the main income producer of the family. He handled all the finances and pretty well made all the family decisions. In 1981 he was discharged as Chief Executive Officer of the Sub Base Credit Union and forfeited a retirement which would have paid him between $40,000.00 to $50,000.00 per year. Instead he took a lump sum of $35,000.00 which he then invested in the restaurant business which failed after 1-1/2 years. The plaintiff CT Page 11006 lost all of his $35,000.00 investment. Although he had subsequent employments as indicated above, he retired at age 64 and presently receives social security benefits.
Currently the defendant is an assistant to Dr. Ross with whom he lives. He also does paintings in his own studio which he attempts to sell. According to his financial affidavit Defendant's Exhibit A) his net weekly income is $313.99. He does not show any income from Dr. Ross.
In 1972 the parties purchased land, containing about 28 acres, located at 30 Stillman Road, North Stonington, Connecticut. Subsequently the parties constructed the marital home on said lot and moved in during 1974. In 1982 the parties remodeled the home by adding three apartments, two 800 square feet in size and one 650 square feet. The parties lived in the main apartment which contained about 3,500 square feet. Presently the plaintiff lives in the main apartment.
The permission which the parties received from the Planning and Zoning Commission of North Stonington, Connecticut to add the apartments requires that the premises shall be occupied by the owners; that occupancy is limited to two adults in each of the added apartments; that no washers and dryers are permitted except in the owner's unit; that only two automobiles per rental unit are allowed; that ownership of the full 28 acres as one piece is required and that no subdivision of acreage is permitted. Plaintiffs Exhibit 5.
The parties' 1998 Income Tax return, Plaintiffs Exhibit 17, shows a total annual rental income from the three apartments of $27,700.00 with expenses and a depreciation of $4,722.00 totaling $41,243.00 for a net loss of $13,543.00. It is probable that if the rental value of plaintiffs apartment was included the total rentals from said property would equal the cash expenses of the property.
The plaintiffs appraiser, Harold Russ, valued the fair market value of the marital home at $390,000.00. The defendant is of opinion it is worth $600,000.00 but would only pay $370,000.00 for it. He wants the home sold.
The assessor of the Town of North Stonington values the property for real estate taxes at $355,357.00. Plaintiffs Exhibit 21, p. 4.
Based on the evidence presented, the court, for purposes of this action, accepts the market value of $390,000.00 for the marital property.
The present mortgages on the property due to the construction thereof CT Page 11007 and remodeling total $252,000.00.
Until 1996 the parties pooled their incomes and lived together although they shared separated bedrooms. In 1996 the defendant contributed $400.00 per month towards the second mortgage on the home but stopped this payment in February 1999. All other payments on the mortgages and expenses of the marital home were paid by the plaintiff from her income and the rental income she received.
The plaintiff owns a 1994 Honda Accord valued at $9,000.00, credit union accounts totaling $1,445.00; 50 shares of Pfizer stock and a State of Connecticut Retirement Plan with a present monthly retirement of $1,100.00±. See Plaintiffs Exhibit 20.
The defendant has stocks valued at $170,263.49 according to his financial affidavit, Defendant's Exhibit A. However, he claims a loan balance against some of said stock of $75,635.00. He also owns a 1994 Cadillac DeVille with an equity of $2,000.00. In addition he claims other personal property, such as paintings, arts, clocks, stained glass, furniture, pool furniture, antiques and a Curana Statue of the Virgin Mary, all valued at S 104,500.00.
After considering all of the provisions of Connecticut General Statutes §§ 46b-62, 66a, 81 and 82, judgment is entered dissolving the marriage of the parties on the ground of irretrievable breakdown. Therefore, it is ordered that:
1. No alimony is awarded to either party.
2. The defendant shall transfer all of his interest in the marital premises at 30 Stillman Road, North Stonington, Connecticut to the plaintiff within 30 days. The plaintiff shall pay all mortgages on said property, all expenses of ownership and hold the defendant harmless on any mortgages presently on said property.
If the defendant refuses to comply with this order, his share of the title to the marital home shall be transferred to the plaintiff pursuant to the provisions of C.G.S. § 46b-81(a).
3. The defendant shall keep free of any claim from the plaintiff his 1994 Cadillac DeVille, his Union Bank of California checking account and the stock and IRA account listed in Defendant's Exhibit A, free of any claim from the plaintiff. The defendant shall be solely responsible for the joint debt of $30,000.00 which is a loan against the Sure Trade account listed on Defendant's Exhibit A and he shall hold the plaintiff harmless from any liability on said loan. CT Page 11008
4. The plaintiff shall keep free of any claim by the defendant her 1994 Honda Accord; her credit union accounts, the Pfizer stock and the State of Connecticut Retirement Plan, all listed on her financial affidavit, Plaintiffs Exhibit 20.
5. No order is made concerning the division of the remaining personal property of the parties not herein above distributed as the court has been informed by the parties that the parties have agreed to a division of said property.
6. Each party shall pay their own attorney's fees.
7. Each party shall assume and pay the debt itemized on their respective financial affidavits excluding the $30,000.00 joint debt which is defendant's obligation as set forth in paragraph 3.
JTR Vasington